UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JOEL T. MARKS                                CIVIL ACTION NO. 6:15-cv-02414

VERSUS                                        JUDGE TRIMBLE

CAROLYN W. COLVIN,                            MAGISTRATE JUDGE HANNA
ACTING COMMISSIONER OF
SOCIAL SECURITY

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed and this matter

dismissed with prejudice.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Joel T. Marks, fully exhausted his administrative remedies prior

to filing this action in federal court.  The claimant filed an application for disability

insurance benefits ("DIB") and an application for supplemental security income

benefits ("SSI"), alleging disability beginning on May 24, 2012.[1]  His applications

were denied.[2]  The claimant requested a hearing,[3] which was held on March 17, 2014

---

[1]      Rec. Doc. 8-1 at 107, 111.

[2]      Rec. Doc. 8-1 at 42, 43.

[3]      Rec. Doc. 8-1 at 64.

before Administrative Law Judge Robert Grant.[4]  The ALJ issued a decision on May 12, 2014,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act from May 24, 2012 through the date of the decision.  The claimant asked for review of the decision, but the Appeals Council concluded on August 31, 2015 that no basis existed for review of the ALJ's decision.[6]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on December 23, 1962.[7]  At the time of the ALJ's decision, he was fifty-one years old.  He graduated from high school[8] and has past relevant work experience as a truck driver, a heavy equipment operator, a deck hand

---

[4]     The hearing transcript is found at Rec. Doc. 8-1 at 26-40.

[5]     Rec. Doc. 8-1 at 14-22.

[6]     Rec. Doc. 8-1 at 4.

[7]     Rec. Doc. 8-1 at 44, 50, 65.

[8]     Rec. Doc. 8-1 at 31, 135.

on a tug boat, and a farm laborer.[9]  He alleges that he has been disabled since May 24, 2012[10] due to neck and back injuries.[11]

The record indicates that Mr. Marks has had documented complaints of low back pain dating back to February 2001 and August 2002.[12]  When he underwent a medical examination for a commercial driver's license ("CDL") in September 2002, he gave a history of having fallen off of a barge in January 2001 and sustaining a low back injury.[13]  Despite the injury, he was cleared for a CDL.[14]  The claimant sought treatment from Dr. Paul M. Rees for neck and back pain in November 2003, and he was advised to undergo physical therapy.[15]  He was again cleared for a CDL in November 2004, but the medical examination report notes that he had experienced chronic neck and back pain since an injury three years earlier.[16]  Mr. Marks was again

---

[9]      Rec. Doc. 8-1 at 32-33, 37-38, 135, 142, 178, 207.

[10]     Rec. Doc. 8-1 at 44, 50, 111.

[11]     Rec. Doc. 8-1 at 44, 50, 134.

[12]     Rec. Doc. 8-2 at 34-37.

[13]     Rec. Doc. 8-2 at 29.

[14]     Rec. Doc. 8-2 at 31.

[15]     Rec. Doc. 8-2 at 27-28.

[16]     Rec. Doc. 8-2 at 24-26.

cleared for a CDL in December 2007.  At that time, he denied any problems.[17]  In December 2009[18] and in December 2011,[19] Mr. Marks was again cleared for a CDL.

On June 24, 2012, Mr. Marks reported to Dr. Rees that he had been involved in a motor vehicle accident about one month earlier, and he complained about neck and right shoulder pain.[20]  Dr. Rees's impression was rotator cuff stress.  Medications were prescribed.

On July 30, 2012, Mr. Marks saw orthopedic surgeon Dr. George Raymond Williams, complaining about worsening neck, back, and leg pain that he attributed to a motor vehicle accident on May 16, 2012.[21]  Examination of the claimant's cervical spine found that he had pain with palpation at the cervicothoracic junction, a normal gait, no visible atrophy, no soft tissue triggers, and no muscle spasms. There was limited range of motion in the cervical spine with flexion and rotation.  His muscle strength was intact, but there was some numbness on the left that Dr. Williams correlated to C5.  Examination of the claimant's lumbar spine revealed pain with palpation at the lower lumbar region, a normal gait, no visible atrophy, no soft tissue

---

[17]     Rec. Doc. 8-2 at 8.

[18]     Rec. Doc. 8-2 at 3.

[19]     Rec. Doc. 8-2 at 15.

[20]     Rec. Doc. 8-2 at 13-14.

[21]     Rec. Doc. 8-2 at 73-77, 104-108.

triggers, no muscle spasms but limited range of motion with flexion and rotation of the lumbar spine.  Sitting and supine straight leg tests and all other special tests were normal.  Dr. Williams diagnosed cervical pain and lumbar back pain.  He prescribed Baclofen and Lortab.  Dr. Williams also opined that Mr. Marks was unable to work pending treatment.[22]

At Dr. Williams's request, MRI testing of the claimant's cervical spine and lumbar spine were performed on August 9, 2012.  The cervical MRI showed severe degenerative disc disease at C5-6 with mild to moderate annular bulging and severe bilateral neural foraminal narrowing as well as severe degenerative disc disease with mild to moderate annular bulging at C6-7.[23]  The lumbar MRI showed mild L4-5 and L5-S1 annular bulging.[24]

The claimant returned to Dr. Williams on August 21, 2012.[25]  Dr. Williams reviewed the MRI results, and prescribed Baclofen, Lortab, and Mobic.  He advised the claimant to rest and apply ice and heat and to engage in home stretching and strengthening programs.  He also referred the claimant for physical therapy.  He noted

---

[22]     Rec. Doc. 8-2 at 78.

[23]     Rec. Doc. 8-2 at 208.

[24]     Rec. Doc. 8-2 at 209.

[25]     Rec. Doc. 8-2 at 85-86.

that the claimant could work light duty if possible.  His diagnoses were cervical pain, cervical degenerative disc, cervical herniated nucleus pulposus ("hnp"), cervical radiculopathy, cervical spondylosis, lumbar back pain, lumbar degenerative disc, lumbar hnp, and lumbar spondylosis.

Mr. Marks had six physical therapy sessions at Moreau Physical Therapy.[26] The discharge summary noted that he met some goals, and his condition was improved.

Mr. Marks returned to Dr. Williams on October 30, 2012.[27]  All testing was normal except that he had pain with palpation at the lower cervical region, pain with palpation at the lumbrosacral junction, limited flexion and rotation in the lumbar spine, and numbness on the left that Dr. Williams correlated with S1.  The diagnoses were the same.  Dr. Williams recommended a trial of cervical and lumbar injections, and he prescribed Baclofen, Lortab, Mobic, and Diclofenac.

Mr. Marks again saw Dr. Williams on November 19, 2012.[28] Steroid injections were administered in the cervical spine and in the lumbar spine.  Dr. Williams's diagnoses were cervical pain, cervical hnp, lumbar back pain, and lumbar hnp.

---

[26]     Rec. Doc. 8-1 at 213, 214-216; Rec. Doc. 8-2 at 46, 47, 52-61.

[27]     Rec. Doc. 8-2 at 88-90.

[28]     Rec. Doc. 8-2 at 93-94.

On August 17, 2013, Mr. Marks was examined by Dr. Shalinder Gupta for the purpose of a consultative disability determination.[29]  Mr. Marks reported that he had been experiencing severe back pain since an accident in May 2012 when the tractor he was driving was hit by a car.  He reported that his primary complaints were right leg pain and right hip pain with tingling.  He stated that physical therapy made his symptoms worse.  He denied urinary and fecal incontinence.  He stated that he takes Meloxicam, Lortab, and other medications, which give some relief.  Mr. Marks told Dr. Gupta that he can dress and feed himself, stand for about two hours, lift about five pounds, drive a car for half an hour, and do household chores such as sweeping, shopping, mopping, vacuuming, mowing grass, cooking, and washing dishes.  Dr. Gupta found that Mr. Marks was in mild distress secondary to pain, but he could walk with minimal distress and dress himself.  His gait was appropriate.  His grip strength was 5/5 bilaterally.  Sitting and supine straight leg raise tests were negative.  He was able to walk on his heels, do heel-to-toe walking, and squat.  His motor strength was 5/5 bilaterally.  He had no sensory deficits.  X-rays showed no acute processes in the cervical or lumbar spine but some narrowing.  His dexterity and grasping ability were appropriate.  His range of motion in various joints was detailed by Dr. Gupta.  Dr.

---

[29]    Rec. Doc. 8-2 at 167-168.

Gupta found that Mr. Marks showed some pain on examination but nothing suggesting a long-term functional disability.

The claimant returned to see Dr. Williams on January 17, 2013.[30]  Dr. Williams noted that the cervical facet block provided 50% relief from pain but the pain had returned.  Dr. Williams noted pain with palpation at the left lower cervical region and mid cervical region and a limitation in rotation of the cervical spine.  Otherwise, the physical examination was normal.  He diagnosed cervical pain, cervical hnp, cervical degenerative disc, and cervical spondylosis.  Dr. Williams noted that the claimant had a "great initial response to the injection but pain has returned."  He also noted that the claimant did not want a second injection.  Dr. Williams recommended a C5-C7 anterior cervical discectomy and fusion.

On August 26, 2013, the claimant visited Dr. Patrick Gillespie in Washington, Louisiana.  His chief complaint was chronic back pain.  He reported that he had longstanding moderate cervical and lumbar spine pain that was alleviated with medication.  He was taking Baclofen, Hydrocodone, and Meloxicam.  Dr. Gillespie noted that the claimant's neck appeared abnormal with wasting of the right trapezius and pectoral girdle.  However, his carotids had intact pulses, normal upstroke, and no bruits.  There was no cervical adenopathy or mass, his veins appeared normal, and his

---

[30]     Rec. Doc. 8-2 at 95-96.

cervical spine was unremarkable with a full range of motion and no pain with motion. He also noted that mobility of the claimant's back was restricted, with stiffness and pain moving from his right leg to his left leg. He diagnosed degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar/sacral spine, and chronic pain syndrome.

The claimant returned to Dr. Gillespie on September 26, 2013 with the same complaints.[31] This time, Dr. Gillespie stated that the appearance of his neck was unremarkable but his neck mobility was impaired, and his chronic neck pain was stated to be 8/10. Dr. Gillespie diagnosed degenerative disc disease of the cervical spine, and he prescribed Hydrocodone.

Mr. Marks next saw Dr. Gillespie on October 24, 2013.[32] This time, Dr. Gillespie diagnosed degenerative disc disease of the lumbar/sacral spine. He noted that the claimant's symptoms were moderate and unchanged but alleviated by medication. He prescribed Meloxicam, Baclofen, and Hydrocodone.

On December 2, 2013, the claimant again saw Dr. Gillespie.[33] The claimant again complained of chronic back pain but reported that his symptoms are alleviated

---

[31]     Rec. Doc. 8-2 at 182-184.

[32]     Rec. Doc. 8-2 at 179-181.

[33]     Rec. Doc. 8-2 at 176-179.

by medication.  Dr. Gillespie diagnosed chronic pain syndrome.  The medications remained the same.

The claimant saw Dr. Gillespie again on January 2, 2014.[34]  His complaints were chronic neck pain and chronic back pain.  Again, his symptoms were described as moderate, and Dr. Gillespie noted that his pain was alleviated by medication.  The diagnoses were degenerative disc disease of the cervical spine and of the lumbar/sacral spine.  Viagara was added to his medications.

Mr. Marks saw Dr. Gillespie again on February 3, 2014.[35]  His chronic neck and back pain were again described as moderate, unchanged, and alleviated by medication.

On February 27, 2014, the claimant returned to Dr. Williams.[36]  His chief complaints were neck and low back pain.  He also described right hand numbness with loss of feeling in the hands and hip and knee pain accompanying his low back pain.  Dr. Williams noted pain with palpation at the lower cervical region and interscapular region as well as a limited range of motion in the cervical spine with rotation.  Dr. Williams correlated the numbness in the claimant's hands with

---

[34]     Rec. Doc. 8-2 at 173-175.

[35]     Rec. Doc. 8-2 at 171-173.

[36]     Rec. Doc. 8-2 at 190-192.

neurological sensory testing at C6 and C7.  Dr. Williams noted mild soft tissue pain with palpation at the lower lumbar region and limited flexion and rotation in the lumbar spine.  In other respects, the physical examination findings were normal.  Dr. Williams again recommended cervical surgery, with an MRI of the cervical spine before surgery.  His diagnoses were cervical pain, cervical hnp, cervical degenerative disc, cervical spondylosis, cervical radiculopathy, lumbar back pain, and lumbar spondylosis.

Mr. Marks again saw Dr. Williams on April 16, 2014, with complaints of increasing cervical and lumbar pain.[37]  Mr. Marks reported that he was now having involuntary loss of grip strength in his right upper extremity.  Dr. Williams found pain with palpation at the lower cervical and interscapular region, soft tissue triggers in the right rhomboid, and a limited range of motion in the cervical spine with rotation, extension, and flexion.  The claimant had slightly decreased muscle strength in his right wrist and fingers.  Neurological sensory testing revealed numbness, more right than left, that Dr. Williams correlated with C6 and C7.  Dr. Williams noted mild soft tissue pain with palpation at the lower lumber region and a limited range of motion in the lumbar spine upon flexion and rotation.  Dr. Williams recommended

---

[37]     Rec. Doc. 8-2 at 200-203.

a repeat MRI of the cervical spine.  He added lumbar radiculopathy to the prior diagnoses and continued the same prescription medications.

The claimant saw Dr. Williams again on May 29, 2014, complaining of increased neck and lumbar pain.  He also stated that his daily activities had become more difficult due to the pain.  The recommended MRI had not yet been approved. Dr. Williams found pain with palpation at the lower cervical region and interscapular region and noted that the claimant exhibited guarded movements as well as a limited range of motion in the cervical spine with rotation, extension, and flexion.  Muscle strength in his right wrist and fingers was 4/5 and he had numbness on the right that correlated to C6 and C7.  Dr. Williams also found mild soft tissue pain with palpation at the lower lumbar region, a limited range of motion of the lumbar spine upon flexion and rotation.  Sitting and supine straight leg raise tests were normal but exacerbated the claimant's lumbar pain.  The diagnoses and medications remained the same, and Dr. Williams stated that the changes in the neurological examination indicated a need for repeated cervical and lumbar MRIs.

The claimant returned to Dr. Williams on July 8, 2014.  All of the physical findings were the same.  The request for new MRIs was repeated due to progressively increased symptoms despite conservative treatment.

The claimant now challenges the Commissioner's finding of nondisability.

-12-

## ANALYSIS

### A.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[38]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[39]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[40]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[41]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the

---

[38]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[39]    *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[40]    *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[41]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

evidence or substituting its judgment for that of the Commissioner.[42]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[43]   Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:   (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[44]

## B.   ENTITLEMENT TO BENEFITS

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[45]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and

---

[42]      *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) (*per curiam*); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[43]      *Martinez v. Chater*, 64 F.3d at 174.

[44]      *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[45]      See 42 U.S.C. § 423(a).

-14-

is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[46]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[47]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[48]

## C.   EVALUATION PROCESS AND BURDEN OF PROOF

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process requires an ALJ to determine whether the claimant

---

[46]      42 U.S.C. § 1382(a)(1) & (2).

[47]      42 U.S.C. § 1382c(a)(3)(A).

[48]      42 U.S.C. § 1382c(a)(3)(B).

-15-

(1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[49]  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[50]

Additionally, before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[51] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[52]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[53]

---

[49]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[50]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[51]     20 C.F.R. § 404.1520(a)(4).

[52]     20 C.F.R. § 404.1545(a)(1).

[53]     20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps.[54]   At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[55]   This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[56]   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[57]   If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[58]

## D.   THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since May 24, 2012, the claimant's alleged disability onset date.[59]   This finding is supported by the evidence in the record.

---

[54]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[55]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[56]   *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[57]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[58]   *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[59]   Rec. Doc. 8-1 at 16.

At step two, the ALJ found that the claimant has the following severe impairments:  degenerative disc disease of the cervical and lumbar spine.[60]  This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[61]  The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform the full range of light work.[62]  The claimant disagrees with this finding.

At step four, the ALJ found that the claimant is not capable of performing his past relevant work.[63]  The claimant does not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from May 24, 2012 through May 12, 2014 (the date of the decision) because there are jobs in the national economy that he can perform.[64]  The claimant challenges this finding.

---

[60]     Rec. Doc. 8-1 at 16.

[61]     Rec. Doc. 8-1 at 16.

[62]     Rec. Doc. 8-1 at 17.

[63]     Rec. Doc. 8-1 at 20.

[64]     Rec. Doc. 8-1 at 21-22.

## E.   THE ALLEGATIONS OF ERROR

Mr. Marks generally contends that the ALJ erred in concluding that he is not disabled because the record lacks substantial evidence supporting the ALJ's unfavorable decision and because the unfavorable decision fails to comport with relevant legal standards.  These complaints are too general to be considered by the Court.  The Court's scheduling order requires a claimant to set forth the specific errors committed at the administrative level and states that a general allegation that the ALJ's findings are unsupported by substantial evidence is insufficient to invoke the appellate function of the Court.  (Rec. Doc. 6 at 2).  The scheduling order also requires a claimant to divide his argument into sections separately addressing each issue, to set forth the claimant's contentions with respect to each issue and the reasons therefor, and to support each contention with specific references to the potions of the record relied upon.  (Rec. Doc. 6 at 3).  The claimant's briefing fails to satisfy these minimal requirements.

However, the appellee has scoured the claimant's briefing and identified three arguments that the claimant appears to be making:  (1) that the ALJ failed to rely on Mr. Marks's subjective complaints, (2) that the ALJ failed to give proper weight to Dr. Williams's opinions, and (3) that the ALJ failed to rely on the vocational expert's hearing testimony.  This Court will address those issues.

**F.    THE ALJ DID NOT ERR IN EVALUATING MR. MARKS'S SUBJECTIVE COMPLAINTS**

Mr. Marks's primary complaints are neck and back pain.  The ALJ found that the claimant has severe degenerative disc disease of the cervical and lumbar spine, which can produce pain.  But the ALJ also found that the claimant retains the residual functional capacity to perform the full range of light work.  It is apparent from the ruling that the ALJ carefully considered Mr. Marks's pain complaints.

Pain can constitute a disabling impairment,[65] but pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[66]  Mild or moderate pain is not disabling.  Furthermore, subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence.[67]  While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.[68]  The mere existence of pain does not automatically create grounds for

---

[65]    *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

[66]    *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990).

[67]    *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[68]    *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

disability, and subjective evidence of pain does not take precedence over conflicting medical evidence.[69] The absence of objective factors can justify the conclusion that a witness lacks credibility.[70]

In this case, the claimant certainly has a medical condition that can cause pain. However, Dr. Williams's records and Dr. Gillespie's records show that the claimant's pain is generally moderate in nature and responsive to therapeutic treatment.

The factors that an ALJ may consider in evaluating the claimant's subjective complaints include: (1) the claimant's daily activities; (2) the medication the claimant takes for pain; (3) the degree of medical treatment the claimant received; (4) the lack of medical opinions in the record indicating that the claimant is precluded from performing the level of activity indicated by the ALJ; and (5) external manifestations of debilitating pain such as marked weight loss.[71] When the claimant most recently saw Dr. Gillespie, in February 2014, Dr. Gillespie noted that the claimant's symptoms are moderate, unchanged since onset, and alleviated by medication.[72] The claimant saw Dr. Williams four times after that. Although Dr. Williams noted in July 2014

---

[69]     *Harper v. Sullivan*, 887 F.2d at 96.

[70]     *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d at 1385.

[71]     *Gill v. Colvin*, No. 12-2771, 2014 WL 801455, at *7 (W.D. La., Feb. 28, 2014).

[72]     Rec. Doc. 8-2 at 171.

that Mr. Marks was complaining of increased pain, he did not change the medications he prescribed or refer Mr. Marks to a pain specialist.  Further, Dr. Williams found no visible muscle atrophy or muscle spasms in the cervical spine, although he did detect some limitations in motion and some decreased muscle strength.  With regard to the lumbar spine, Dr. Williams found a normal gait, no visible muscle atrophy, no soft tissue triggers, no muscle spasms, and the special testing was all negative.  The claimant testified at the hearing that he has pain in his neck and low back but he did not describe the level of pain or address whether it is responsive to his daily medication.  He did testify that his pain was temporarily relieved by steroid injections. In his ruling, the ALJ reviewed the claimant's usual activities, reviewed his prescribed medications, reviewed the medical treatment he has received, reviewed the restrictions placed on his activities by his physicians, and mentioned his testimony at the hearing.  Thus, the ALJ used the proper legal standard for evaluating his pain complaints.

Evidence in the record supports a conclusion that the claimant's pain is not wholly unresponsive to therapeutic treatment.   Although Dr. Williams noted increased pain symptoms at the more recent appointments, he continued to prescribe the same dosage of pain medication from August 2012 through July 2014.  The dosage has never been increased, stronger pain medication has never been prescribed,

the claimant has not been referred to a pain management specialist, and the treatment notes are devoid of complaints of severe or unremitting pain – either to Dr. Williams or to Dr. Gillespie.  These facts support the ALJ's conclusion that the claimant's pain is not disabling.  Therefore, the ALJ's analysis of the claimant's subjective complaints is supported by substantial evidence in the record.

## G.   THE ALJ DID NOT ERR IN WEIGHING DR. WILLIAMS'S OPINIONS

The claimant appears to contend that the ALJ failed to give proper weight to the opinions of his treating physician, Dr. Williams.  The Social Security regulations and rulings explain how medical opinions are to be weighed.[73]  Generally, the ALJ must evaluate all of the evidence in the case and determine the extent to which medical source opinions are supported by the record, but the ALJ has sole responsibility for determining the claimant's disability status.[74]  Although a treating physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability.[75]  In fact, when a treating physician's opinion regarding the nature and severity of an impairment is

---

[73]      20 C.F.R. § 404.1527(c), § 416.927(c), SSR 96-2p, SSR 96-5p.

[74]      *Newton v. Apfel*, 209 F.3d at 455.

[75]      *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[76]

In this case, the ALJ did not expressly give any amount of weight to Dr. Williams's opinions.  However, the ALJ noted that "[t]he claimant's treating physicians have not offered a specific opinion regarding his residual functional capacity but the objective findings have been considered and are consistent with the ability to perform light work."[77]  The ALJ gave "significant weight" to the August 2012 MRI testing, and "great weight" to the opinions of the consultative examiner, Dr. Gupta.  The claimant did not identify any objective findings of Dr. Williams or any opinion expressed by Dr. Williams that supports the conclusion that he is not capable of performing light work.  Indeed, Dr. Williams recommended in August 2012 that Mr. Marks attempt light duty work.[78]  It is unclear whether the light duty work referred to by Dr. Williams correlates precisely with light work, as that term is defined in the Social Security regulations, but Dr. Williams's recommendation suggests that it was his opinion, at that time, that Mr. Marks was capable of some

---

[76]     20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[77]     Rec. Doc. 8-1 at 20.

[78]     Rec. Doc. 8-2 at 85-86.

level of work.   Dr. Williams's records contain no restrictions on the claimant's activities and no other opinions regarding Mr. Marks's ability to work.   Therefore, there is no evidence in Dr. Williams's treatment notes contradicting the ALJ's conclusion that the claimant can perform light work.   Consequently, there is no basis for the claimant's argument that Dr. Williams's opinions should have been given more weight.

## H.   THE ALJ DID NOT ERR IN EVALUATING THE VOCATIONAL EXPERT'S TESTIMONY

The claimant appears to argue that the ALJ erred in evaluating the hearing testimony of the vocational expert, Donald Rue.   In his brief, the claimant states that Mr. Rue's testimony, along with other evidence in the record "establish[es] claimant's physical and mental limitations, which renders him an unreliable worker."[79]   The claimant further suggests that Mr. Rue "agreed that because of claimant's inability to sit and stand for more than a few minutes as a result of pain, and his inability to sit for more than a few minutes, Mr. Marks would not be employable."[80]

In this case, the ALJ found that the claimant's only severe impairment is degenerative disc disease of the cervical and lumbar spine.   The claimant does not

---

[79]      Rec. Doc. 12 at 4.

[80]      Rec. Doc. 12 at 4.

contend that he has any other severe impairments.  More particularly, he does not contend that he has any severe nonexertional impairments.  The ALJ found that the claimant has the residual functional capacity to perform light work.  As explained above, this finding was supported by substantial evidence in the record.  At step four of the sequential analysis, the ALJ found that the claimant's severe impairment precludes him from doing his past relevant work.  The claimant does not disagree with that finding. At step five, the ALJ applied the Medical-Vocational Guidelines ("the Grids") to find Mr. Marks not disabled.

Once a claimant satisfies his burden under the first four steps of the required analysis, the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing.[81]  The Commissioner may meet that burden by reference to the Grids,[82] by expert vocational testimony, or by other similar evidence.[83]  The Commissioner may rely exclusively on the Grids if (1) the claimant suffers only from exertional impairments or (2) the claimant's nonexertional impairments do not significantly

---

[81]     *Greenspan v. Shalala*, 38 F.3d at 236.

[82]     The Guidelines, also known as the "Grids," are found at 20 C.F.R. § 404, Sub-part P, Appendix 2.

[83]     *Fraga v. Bowen*, 810 F.2d at 1304.

affect his residual functional capacity.[84]  The Grids may not be fully applicable where the nature of a claimant's impairment is nonexertional, such as when a claimant has certain mental, sensory, or skin impairments.[85]   Thus, the Grids may be used exclusively "only if the guidelines' evidentiary underpinnings coincide exactly with the evidence of disability appearing in the record."[86]  If nonexertional impairments significantly affect the claimant's residual functional capacity, the Commissioner may not rely upon the Grids exclusively; instead, he is permitted to look to the Grids for guidance but must also utilize expert vocational testimony or other similar evidence to meet his burden of proving that there are a significant number of jobs in the national economy that the claimant can perform.[87]  To reiterate, the Fifth Circuit has held that the use of the Grids is appropriate when a claimant suffers only from exertional impairments or if a claimant's nonexertional impairments do not significantly affect his RFC.[88]

---

[84]     20 C.F.R. § 404.1569; *Fraga v. Bowen*, 810 F.2d at 1304.

[85]     20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).

[86]     *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Scott v. Shalala*, 30 F.3d 33, 34-35 (5th Cir. 1994); *Lawler v. Heckler*, 761 F.2d at 197.

[87]     *Fraga v. Bowen*, 810 F.2d at 1304.  See, also, *Crowley v. Apfel*, 197 F.3d at 199; *Lawler v. Heckler*, 761 F.2d at 198; *Dellolio v. Heckler*, 705 F.2d 123, 127-28 (5th Cir. 1983).

[88]     *Rigby v. Colvin*, No. 15-31008, 2016 WL 3455955, at *1 (5th Cir. 2016) (unpublished), quoting *Fraga v. Bowen*, 810 F.2d at 1304; *Newton v. Apfel*, 209 F.3d at 458; *Crowley v. Apfel*, 197 F.3d at 199.

-27-

Here, it is undisputed that the claimant is closely approaching advanced age, has a high school education, and has no severe nonexertional impairments. The ALJ also found that the claimant has the residual functional capacity to perform light work. Therefore, regardless of whether the claimant's skills are transferrable, the Grids support a finding of not disabled.[89]  Accordingly, the ALJ did not err in using the Grids.

Because the ALJ relied on the Grids at step five, he was free to disregard the vocational expert's hearing testimony, and it was proper for the ALJ to rely on the Grids to determine that a significant number of jobs exist in the national economy that the claimant may perform. Therefore, the ALJ did not err in evaluating the vocational expert's testimony.

Furthermore, even if the ALJ had relied upon the vocational expert's testimony, it is entirely possible that he would have reached the same conclusion. The ALJ asked the vocational expert if a person with the same age, education, and work experience as the claimant, with a light residual functional capacity, could perform jobs in the national or regional economy. The vocational expert answered in the affirmative, pointing to jobs such as price marker and sales attendant.[90]  The

---

[89]     20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.14.

[90]     Rec. Doc. 8-1 at 38-39.

vocational expert then answered the ALJ's next hypothetical question in the negative, but that question incorporated not only  the ability to stand and walk for only a few minutes of the work day but also the ability to lift only ten pounds occasionally.[91]  But the ALJ did not find that Mr. Marks is limited in those ways.  An ALJ need only incorporate into his hypothetical questions those claimed limitations "supported by the evidence and recognized by the ALJ."[92]  Therefore, the ALJ was not required to rely upon the vocational expert's response to a question incorporating impairments that the ALJ did not recognize.[93]  The ALJ did not err in evaluating the vocational expert's testimony.

### CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ applied appropriate legal standards in ruling on this case and further finds that the ALJ's findings are based on substantial evidence in the record.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter be dismissed with prejudice.

---

[91]     Rec. Doc. 8-1 at 39.

[92]     *Masterson v. Barnhart*, 309 F.3d at 273.

[93]     *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 18th day of August 2016.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE